[Cite as *State v. Holland*, 2013-Ohio-904.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 11-CA-47 |
| BRIAN E. HOLLAND | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County Court of
                             Common Pleas, Case No. 10 CR 628

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      February 26, 2013

APPEARANCES:

For Appellant:                          For Appellee:

THOMAS S. GORDON                        KENNETH OSWALT
P.O. Box 314                            LICKING CO. PROSECUTOR
Pickerington, OH 43147                  BRIAN WALTZ
                                        20 S. Second St., 4th Floor
                                        Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Brian E. Holland appeals the March 23, 2011 judgment entry of the Licking County Court of Common Pleas convicting him of one count of illegal manufacture of methamphetamine and one count of illegal assembly or possession of chemicals for the manufacture of methamphetamine. Appellee is the state of Ohio.

{¶2} Appellant's contemporaneous *pro se* appeal from the June 19, 2012 judgment entry of the trial court denying his motion for post-conviction relief arises from the same underlying case. The appeals are not consolidated and therefore shall be determined separately.

*FACTS AND PROCEDURAL HISTORY*

{¶3} This case arose on November 6, 2010, when Deputy Robert Barr of the Licking County Sheriff's Office was on routine patrol. Around 12:16 p.m., Barr was dispatched to an address on Stoddens Bridge Road for a report of a vehicle parked in a wooded area, partially covered by a tarp. Barr described the scene as wooded and rural, between Stoddens Bridge Road and the Licking River. He immediately spotted a vehicle parked off the road, in the woods on the embankment near the river, partially covered by a camouflage tarp.

{¶4} Barr soon observed two males come up the embankment, followed soon by another male. At trial, he testified he saw "three heads, bobbing along" on the other side of the embankment. The two males approached and Barr asked them where the third had gone; they replied he was on his way. Barr noticed a strong chemical odor coming from the direction of the men. He asked them what they were doing and they replied they were fishing, but they didn't have any equipment or fishing

licenses.  The third man now approached, identified by Barr at trial as appellant.  Barr noticed appellant had a bleeding cut on his finger.

{¶5}  Barr asked all three individuals for I.D., which only appellant was able to produce.  The other two provided names and dates of birth and are identified in the record as Nard and Stevens.

{¶6}  Appellant asked if he could get a napkin or something to cover the cut. Barr assented and appellant pulled the camouflage cover off look inside the car for something to cover the cut.  Appellant told Barr the vehicle belonged to his girlfriend and that he had borrowed it to drive to the scene.

{¶7}  Once backup officers arrived on the scene, the three men were separated and questioned; Barr testified all three had different stories about what they were doing at the river.  Initially, appellant told Barr he drove to the river because he had a fight with his girlfriend.

{¶8}  Barr took a closer look at the vehicle.  He smelled a strong chemical odor near the vehicle and observed what he believed to be a meth lab: a gas can covered with "white icing," later determined to be frost, sitting on the ground.  He also saw a Mountain Dew soda bottle with a hose coming out of it.  Barr photographed the evidence he observed and the photos were entered into evidence at trial.

*Boerstler Testifies to Elements of a Meth Lab*

{¶9}  Barr called Detective Boerstler, a drug trafficking investigator, to the scene.  Boerstler is trained in investigation of meth labs and the resulting officer safety issues due to the volatility of chemicals involved.  Boerstler testified to the steps involved in manufacturing methamphetamine and described some of the ingredients

needed, which include pseudoephedrine pills, starting fluid, ether, coffee filters, anhydrous ammonia, camp fuel, containers and tubing, and lithium batteries. He noted there are hundreds of methods of manufacturing methamphetamine, and it may be "thrown together" in a 2-liter bottle of soda.

{¶10} The process of cooking meth was described in general terms at trial. Pseudoephedrine pills must be broken down and crushed into powder, then mixed with a solvent to extract the pseudoephedrine. Lithium camera batteries must be peeled with a utensil, allowing the lithium to react with the solvent in the anhydrous ammonia. The extracted ephedrine is collected in a coffee filter, solvent is added, and "meth oil" comes to the top. A hydrochloric gas generator is used to extract the meth from the oil, which may be as rudimentary as a soda bottle with tubing, salt, and sulfuric acid such as drain cleaner. The tubing is placed into the vessel containing the meth oil to turn the liquid into a solid, which is the finished product.

*Evidence Found at the Scene*

{¶11} Boerstler described his observations at the scene on the Licking River in terms of his experience with the manufacture of methamphetamine. He observed the vehicle partially hidden in the woods and noticed the odor of ether coming from its trunk. He observed the 20-ounce Mountain Dew soda bottle in the grassy area off the trail, and concluded it was a gas generator because it was "off gassing," or producing hydrochloric gas as he watched. He testified there is no purpose for this process other than the manufacture ("cooking") of methamphetamine.

{¶12} Further down the trail Boerstler found black and blue bags and two plastic containers, from which he immediately noticed the odor of anhydrous ammonia

emanating. The black and blue bags were partially buried under grass and hidden under the bank. Boerstler searched for a tank of anhydrous ammonia and discovered a two-gallon gas tank with a frost line on it. The frost line indicated the presence of anhydrous because the substance is 28 degrees below zero when it comes out of a tank. This gas tank was found just west of the covered vehicle, and its lid was in the trunk.

{¶13} The plastic containers and the gas tank tested positive for the presence of anhydrous ammonia. The bigger plastic container found on the riverbank contained an "active cook:" inside were pseudoephedrine pills, solvent, anhydrous ammonia, and peeled lithium batteries. Boerstler detected a slight pinkish color, typical of pseudoephedrine pills, and the lithium strips were bubbling. The other container was topped with a coffee filter containing white residue; on the bottom was a clear liquid which tested positive for anhydrous ammonia. Drain cleaner was found in one of the plastic bags, which may be used with salt to form a gas generator. The black bag contained pliers, salt, starting fluid, and a pair of gloves.

{¶14} Boerstler obtained consent to search appellant's vehicle and in the trunk discovered a plastic bag containing peeled lithium batteries and punctured cans of ether from which the liquid had already been removed. Boerstler testified that punctured ether cans are commonly found at meth lab sites because punctured cans enable meth cooks to pour out the liquid instead of spraying it. The nozzle of the 2-gallon gas can was also in the trunk and tested positive for anhydrous.

{¶15} Boerstler concluded the only purpose for this accumulation of items and chemicals is the manufacture of methamphetamine. He explained that he did not find

the finished product at the scene because it was still being cooked when the trio was apprehended.

*The Investigation and Appellant's Changing Stories*

{¶16} A witness from a CVS pharmacy testified appellant bought 48 pseudoephedrine pills on October 29, 2010, based upon the store's pseudoephedrine log. Appellant was identified in the log by date of birth and the given address of 22 Parker Avenue, Newark.

{¶17} Appellant initially told Boerstler Nard and Stevens called him because they needed a ride and he claimed not to know anything about the meth cook. When asked how the ether cans got into the trunk, appellant said Nard had placed a bag of trash there to be thrown away. Appellant agreed he smelled the ether but said he didn't see anything unusual.

{¶18} Boerstler then interviewed Nard, Stevens, and Donita Blackstone, appellant's girlfriend. After speaking with them, he returned to appellant, who now apologized and said he didn't want to snitch, but Nard had promised him $50 for a ride. Appellant didn't know about the meth cook until he arrived. He admitted the trio was not fishing, and admitted that he personally placed the ether cans in the trunk of the vehicle. He further explained he had covered the car with the tarp at Nard's request so it couldn't be seen from the road. Appellant denied purchasing pseudoephedrine pills but admitted he had used meth in the past. Appellant's given address was 22 Parker Avenue, Newark.

{¶19} At trial, appellant testified and claimed total ignorance. He said Nard asked for a ride, promising to pay him $50. Appellant lives a few minutes away from

the Stoddens Bridge Road location and arrived to find Nard with Stevens, whom appellant was also familiar with. Appellant said he pulled in to the area for vehicle access and Nard approached with a camouflage blanket, stating "it wasn't done yet." Appellant said it was Nard who covered the car and denied bringing any meth ingredients to the scene. Nard told him they would need another 10 or 15 minutes, so appellant walked down the path along the river looking for arrowheads or rocks and cut his finger when he attempted to pull a tire out of the riverbed. He testified he didn't ask Nard and Stevens what they were up to because he assumed they were smoking crack.

{¶20} Appellant further testified he didn't see law enforcement arrive and returned to the vehicle only because he thought Nard and Stevens were ready to leave. He claimed to have no idea what Nard and Stevens were doing and said he repeatedly told officers he didn't know anything. He also testified that Nard had placed the plastic bag in the trunk containing the ether cans and batteries, telling appellant it was trash to be thrown away. Appellant did admit he bought pseudoephedrine at the drugstore about a week prior because he had a cold. He denied making any of the statements Boerstler attributed to him and claimed not to have noticed any chemical smells at the scene.

{¶21} Boerstler was recalled to the stand after appellant's testimony and reiterated that appellant told him had observed the meth cook taking place, and had later admitted he personally put the ether cans in the trunk and covered the car with the tarp.

*Indictment, Conviction, and Sentence*

{¶22} Appellant was charged by indictment with one count of illegal manufacture of methamphetamine pursuant to R.C. 2925.04(A)(C)(3)(a), a felony of the second degree, and one count of illegal assembly of chemicals with intent to manufacture methamphetamine pursuant to R.C. 2925.041(A)(C)(1), a felony of the third degree. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant moved for judgments of acquittal at the close of appellee's evidence and at the close of all of the evidence, and the motions were overruled. Appellant was found guilty as charged and sentenced to a prison term of seven years.

*Appellate Procedural History*

{¶23} Appellant's initial appeal under this case number was filed on April 22, 2012. Through counsel, appellant raised one assignment of error: the trial court erred by including in the sentencing entry a provision that appellant is not to be considered or released on transitional control.

{¶24} On July 5, 2011, appellant filed a pro se "Motion to Stay Appeal and to Re-Appoint Appellate Counsel," arguing that appellate counsel should have raised a number of additional assignments of error. We denied the motion, noting "[a]ppellant is represented by counsel. This Court will not consider any future pro se pleadings filed by Appellant."

{¶25} We sustained appellant's sole assignment of error on the authority of *State v. Spears*, 5th Dist. No. 10-CA-95, 2011-Ohio-1538, ¶ 34-38, and reversed and remanded the matter to the trial court for resentencing absent the "transitional control" language. *State v. Holland*, 5th Dist. No. 11-CA-47, 2011-Ohio-6042, ¶ 6.

{¶26} On February 14, 2012, appellant filed a pro se Application for Reopening, which we sustained on June 4, 2012. Specifically, we found a genuine issue exists as to whether appellant was deprived of effective assistance of appellate counsel for failure to cite as error the sufficiency of the evidence, and ordered this issue to proceed as if on initial appeal to this court.

{¶27} Appellant now raises one Assignment of Error:

{¶28} "I. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

{¶29} Appellant argues his convictions for illegal manufacture of methamphetamine and illegal assembly of chemicals with intent to manufacture methamphetamine are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶30} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶31} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶32} Appellant was convicted of one count of illegal manufacture pursuant to R.C. 2925.04(A)(C)(3)(a), which states in pertinent part: "No person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance." Appellant was also convicted of one count of illegal assembly of chemicals with intent to manufacture methamphetamine pursuant to R.C. 2925.041(A)(C)(1), which states in pertinent part: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." We note that R.C. 2925.041(B) states conviction of the offense requires possession of as few as one of the necessary ingredients:

In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section.

{¶33} Appellant asserts his convictions must be reversed because no evidence exists he possessed or knowingly made, prepared, or engaged in the process of manufacture; nor was he found in possession of any of the chemicals necessary for the manufacture of methamphetamine.  We disagree and find appellee presented sufficient evidence of appellant's culpability.  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).  Boerstler testified appellant told him he was aware that a meth cook was taking place upon his arrival at the scene but he chose not to leave and remained at the scene, placed the ether cans in the trunk, and covered the car with the tarp so it couldn't be seen from the road once he knew meth was being cooked.  Both officers testified to the strong chemical odor that pervaded the scene, further belying appellant's insistence at trial that he didn't know a meth cook was taking place.

{¶34} The jury was instructed on complicity as to both counts.  R.C. 2923.03(A) provides in relevant part, "No person, acting with the kind of culpability required for the

commission of an offense, shall * * * [a]id or abet another in committing the offense." Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. See *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus; *State v. Hickman,* Stark App. No.2003-CA-00408, 2004-Ohio-6760 at ¶ 45. conduct before and after the offense is committed." *State v. Mendoza*, 137 Ohio App.3d 336, 342, 738 N.E.2d 822 (2000), citing *State v. Stepp*, 117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342 (1997); *State v. Myers,* Richland App. No. 03-CA61, 2004-Ohio-3052 at ¶ 116. Appellee presented sufficient evidence from which the jury could conclude appellant aided and abetted the meth cook.

{¶35} Appellant argues, though, he was not found in "possession" of any meth ingredients. We disagree. Ohio Revised Code 2925.01(K) defines "possess" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. Actual possession entails ownership and physical control. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession. *State v. Wolery,* 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly,* 137 Ohio App.3d 134, 141, 738 N.E.2d 93 (8th Dist.2000).

{¶36} Appellant asserts "he never possessed the pills (pseudoephedrine) necessary to make methamphetamine." Possession of pseudoephedrine alone is not

necessary to appellant's convictions on either count, but we note appellant testified he purchased pseudoephedrine "about a week" before the meth cook. Appellant's assertions that no pseudoephedrine was found at the scene are not borne out by the record because Boerstler testified the "active cook" in the larger plastic container on the riverbank contained pseudoephedrine pills, solvent, anhydrous ammonia, and lithium batteries; he could see a pinkish color typical of the dissolving pill coating. Additionally, the Newark Police Department criminalist testified residue recovered by investigators tested positive for pseudoephedrine.

{¶37} Appellant argues he "never possessed any other items necessary for the manufacture of methamphetamine" while at the same time acknowledging punctured ether cans and peeled lithium batteries were found in the trunk of the car appellant drove to the scene. Boerstler testified punctured ether cans are typical of meth lab sites and no legitimate explanation exists for the presence of other items, including the peeled lithium batteries and the "off-gassing" container of anhydrous ammonia. The lid of the gas tank used for anhydrous was also found in the trunk. We find the jury did not lose its way in finding appellant guilty of both counts.

{¶38} Appellant attempts to distinguish the instant case from that presented in *State v. Kracker*, 9th Dist. No. 23986, 2008-Ohio-4339, appeal not allowed, 120 Ohio St.3d 1489, 2009-Ohio-278, 900 N.E.2d 199, a case which is instructive as to circumstantial evidence of constructive possession. We find our decision in *State v. Morse* to be more on point. 5th Dist. No. 2003CA00191, 2004-Ohio-615. We found the circumstantial evidence in that case to be sufficient where meth-related items were found in the appellant's vehicle and appellant directly abetted the meth manufacture,

as here.  Id., 2004-Ohio-615 at ¶ 28.  In the instant case, appellant was found in close proximity to an active meth cook, with a number of components for the manufacture of meth in the trunk of his vehicle, and attempted to conceal the cook by covering the car so it could not be seen from the road.

{¶39} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.   Appellant's sole assignment of error is overruled and the judgment of the Licking County Court of Common Pleas is affirmed.


By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


PAD:kgb

[Cite as *State v. Holland*, 2013-Ohio-904.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BRIAN E. HOLLAND | : | |
| | : | |
| | : | Case No. 11-CA-47 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed.  Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN