[Cite as *State v. Rolf*, 2022-Ohio-3049.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21CA0080 |
| | : | |
| TODD A. ROLF | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Licking County Court of
Common Pleas, Case No.
2019CR00807


JUDGMENT:                   AFFIRMED


DATE OF JUDGMENT ENTRY:     August 31, 2022


APPEARANCES:


For Plaintiff-Appellee:                 For Defendant-Appellant:

WILLIAM C. HAYES                        WILLIAM T. CRAMER
LICKING CO. PROSECUTOR                  470 Olde Worthington Road, Suite 200
CLAY MISCHKA                            Westerville, OH 43082
20 S. Second St., Fourth Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Todd A. Wolf appeals from the September 29, 2021 Judgment Entry of the Licking County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following statement of the case and facts is taken in part from our decision at *State v. Rolf*, 5th Dist. Licking No. 2020 CA 00077, 2021-Ohio-2475, ¶ 2-14.

{¶3} On October 10, 2019, the Licking County Grand Jury indicted appellant on one count of aggravated possession of controlled substances (methamphetamine), in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree; one count of operating a vehicle under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1)(a)(G)(1)(e), a felony of the third degree; one count of operating a vehicle under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1)(j)(i)(iii)/(v)(iii)(II), a felony of the third degree; and one count of driving under suspension, in violation of R.C. 4510.14(A), a misdemeanor of the first degree.

{¶4} The trial court appointed Attorney Kristin Burkett to represent appellant. Appellant appeared before the trial court for arraignment on December 3, 2019, and entered a plea of not guilty to the Indictment. Following a pretrial conference on January 13, 2020, the trial court issued a pretrial entry, which ordered all pretrial motions be filed on or before February 17, 2020. Appellant filed a motion to suppress. Therein, appellant argued "the search and the seizure of the alleged contraband were illegally conducted in violation of his Ohio and United States constitutional rights to be free from unreasonable searches and seizures."

{¶5} The trial court conducted a suppression hearing on March 2, 2020.

{¶6} Ohio State Highway Patrol Trooper Jordan Daniel testified he was working on June 3, 2019, when he observed a vehicle, which was traveling north on Outville Road, make several left-of-center violations. Trooper Daniel noted he was in uniform and operating a marked cruiser with overhead lights at the time. As he continued to follow the vehicle, Trooper Daniel also observed erratic braking, weaving within its lane, and again crossing the double yellow line. Trooper Daniel initiated a traffic stop near the intersection of Outville Road and State Route 16.

{¶7} The trooper approached the vehicle on the driver's side and made contact with the driver, who was subsequently identified as appellant. Trooper Daniel detected the odor of alcohol emanating from the vehicle, and noticed appellant's eyes were red and glassy, his speech was slurred, and his movements were slow and lethargic. Trooper Daniel added appellant's pupils remained dilated even after he moved his flashlight away from appellant's face.

{¶8} Trooper Daniel asked appellant for his license and registration. Appellant advised the trooper he did not have his license. During this interaction, appellant began to look for the vehicle registration. Appellant had difficulty manipulating his fingers, fumbling through papers as he searched in the glove compartment. When the trooper asked appellant if he had been drinking, appellant responded he had had one beer six hours earlier. While appellant was looking for the registration, Trooper Daniel noticed a styrofoam cup in the center console. When the trooper inquired as to the contents of the cup, appellant leaned forward to block Trooper Daniel's view and asked several times, "What cup?" Appellant finally stated there was alcohol in the cup. Trooper Daniel instructed appellant to step out of the vehicle, explaining he wanted to ensure appellant

was safe to drive. The trooper noticed appellant's clothing was disheveled, his pants were unbuckled and unzipped. When appellant exited the vehicle, Trooper Daniel noticed an odor of alcohol emanating from appellant's person.

{¶9} Trooper Daniel had to remind appellant several times to follow his finger during the horizontal gaze nystagmus test. The trooper did not observe any signs of nystagmus in appellant's eyes. The signs appellant exhibited during the HGN correlated with alcohol or drug impairment. When asked what time he had his last drink, appellant stated he had just taken a sip from the styrofoam cup. Dispatch provided the trooper with a LEADS check, which revealed appellant's license was suspended. Trooper Daniel advised appellant he could not drive because of the suspension and instructed him to telephone the owner of the vehicle. Appellant indicated his phone was dead and he was unable to contact the owner. As a result, the vehicle would be towed from the scene.

{¶10} Trooper Daniel placed appellant in the back of his cruiser. The trooper then conducted an inventory of the vehicle. Trooper Daniel removed the cup from the center console and noticed it seemed heavier than the liquid he observed in it. He emptied the contents onto the ground and saw not only purple liquid, but also what appeared to be ice. Trooper Daniel continued to search the vehicle for additional alcoholic beverages. Located next to the driver's seat and the center console, he found a chunk of a white crystalized substance, which was identical to the "ice" which he found in the styrofoam cup. Trooper Daniel then had appellant step out of the cruiser and read appellant his Miranda rights. Trooper Daniel continued the search, finding a clear, cloudy white substance under the driver's seat and a glass smoking pipe next to the door panel on the driver's side.

{¶11} Trooper Bell arrived at the scene to assist. Trooper Bell located a plastic bag containing more of the white crystallized substance as well as multiple opened containers of alcohol. Trooper Daniel noticed appellant's speech became more deteriorated and lethargic. Appellant was also having a difficult time paying attention and answering questions. Trooper Daniel could still detect an odor of alcohol on appellant's person. He again had appellant exit the cruiser and conducted additional standardized field tests. Thereafter, appellant was placed under arrest. The white crystallized substance was tested and determined to be methamphetamine.

{¶12} Via Judgment Entry filed May 4, 2020, the trial court denied appellant's motion to suppress. The trial court found Trooper Daniel possessed sufficient reasonable suspicion to stop appellant for a traffic violation and developed sufficient probable cause to place appellant under arrest. The trial court further found the trooper possessed sufficient probable cause to search the vehicle after finding the contraband in it. The trial court added Trooper Daniel also possessed sufficient reason to conduct an inventory search due to appellant not being able to drive and not having a way to contact someone who could drive the vehicle.

{¶13} On October 2, 2020, Attorney Burkett filed a motion for leave to withdraw as attorney of record. The trial court granted the motion on October 5, 2020, and appointed Attorney Zachuary Meranda as counsel for appellant. On November 23, 2020, Attorney Meranda filed a motion to suppress, arguing Trooper Daniel did not have probable cause to stop appellant's vehicle for a marked lane violation. Via Judgment Entry filed November 24, 2020, the trial court denied the motion, finding "[t]he exact same motion was filed on behalf of [Appellant] on January 17, 2020, and was the subject of a

contested suppression hearing on March 2, 2020. A judgment entry denying the motion was filed May 4, 2020." *Id.* The trial court continued, "The same motion to suppress having already been denied, as it is the law of the case, and therefore this most recent motion is DENIED." *Id.*

{¶14} Appellant appeared before the trial court on December 8, 2020, withdrew his former pleas of not guilty, and entered pleas of no contest. The trial court accepted appellant's no contest pleas and found him guilty as charged. The trial court sentenced appellant to an indeterminate prison term of three years to four and a half years on Count 1 (aggravated possession of a controlled substance); three years on Count 2 (operating a vehicle under the influence of alcohol or drugs), and 180 days on Count 4 (driving under OVI suspension). Count 2 and Count 3 (operating a vehicle under the influence of alcohol or drugs) were merged for purposes of sentencing. The state elected to have appellant sentenced on Count 2.

{¶15} The trial court ordered the sentences on Counts 1 and 2 run consecutively with each other and concurrently with the sentence on Count 4.

{¶16} Appellant filed a direct appeal of his convictions and sentence, arguing the trial court should have considered an issue raised in the second motion to suppress; the trial court failed to make the required findings to impose consecutive sentences; and the trial court erred in failing to specify the length of the operator's-license suspension during the hearing. *State v. Rolf*, 5th Dist. Licking No. 2020 CA 00077, 2021-Ohio-2475, ¶ 13. We overruled appellant's first assignment of error, but agreed with appellant that the trial court did not make the requisite findings for consecutive sentences and erred in imposing a lifetime operator's-license suspension when the duration was not addressed at the

sentencing hearing.   *Rolf I,* supra, ¶ 26 and ¶ 31.   The matter was remanded for resentencing.  *Id.*

{¶17}  On September 28, 2021, appellant appeared on video from the Department of Corrections for resentencing.  Appellant's prior defense trial counsel, Mr. Meranda, was present, and stated the following in pertinent part:

> * * * *.
>
> MR. MERANDA:  Thank you, Your Honor.  Your Honor, I briefly spoke to my client prior to going on the record here today. He's indicated to me he wishes to proceed pro se, without counsel, today in this resentencing hearing.  I did explain to him the two issues that were remanded back to this Court for resentencing purposes, which was the consecutive findings and the license suspension issues. I explained to him that it was more than likely there was not going to be a license suspension imposed and it was only going to go forward or proceed with the consecutive findings portion of the resentencing, but he's indicated he wishes to address this pro se.
>
> THE COURT:  Very well.  Mr. Rolf, is there anything you would like to say on your own behalf before the Court imposes any sentence here?
>
> [APPELLANT]:  I'd like to add that currently—the Ohio Supreme Court and under advice of counsel—
>
> THE COURT:  We're having trouble with your audio, Mr. Rolf.
>
> * * * *.

* * * *.

{¶18} Some problems with appellant's audio feed ensued, but appellant argued 1) he could not be subjected to consecutive sentencing because there was no pre-sentence investigation (PSI) in his case; 2) the trial court lacks jurisdiction to sentence him because the case did not originate with a traffic citation; and 3) he received an improper amount of jail-time credit.

{¶19} The trial court thereupon found consecutive sentences are necessary to protect the public from future crime and to punish appellant and are not disproportionate to the seriousness of his conduct and the danger he poses to the public. The trial court further found appellant's history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by appellant.

{¶20} The trial court then turned to the sentencing memorandum prepared for appellant's original sentencing hearing, noting appellant's prior criminal history included numerous drunk-driving convictions dating back to 1991; appellant also has convictions for trafficking in marijuana, robbery, grand theft, D.U.S., and falsification. The trial court clarified no operator's-license suspension was imposed.

{¶21} The trial court again found that Counts 2 and 3 merge for purposes of sentencing and appellee elected to sentence upon Count 2. Appellant was sentenced to an indeterminate mandatory prison term of 3 to 4½ years upon Count 1, and a stated prison term of 3 years upon Count 2. Appellant is also ordered to serve a jail term of 180 days upon Count 4. The terms in Counts 1 and 2 are ordered to be served consecutively to each other and concurrently with Count 4 for a total aggregate prison term of 6 to 7½ years.

{¶22} Appellant now appeals from the judgment entry of his conviction and resentencing.

{¶23} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶24} "I. APPELLANT'S RIGHT TO COUNSEL UNDER FEDERAL AND STATE CONSTITUTIONS WERE VIOLATED WHEN THE TRIAL COURT PERMITTED HIM TO PROCEED PRO SE AT RESENTENCING WITHOUT ENSURING A KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER OF COUNSEL."

{¶25} "II. BY CLEAR AND CONVINCING EVIDENCE, THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S CONSECUTIVE SENTENCE FINDINGS."

**ANALYSIS**

I.

{¶26} In his first assignment of error, appellant argues the trial court violated his rights in permitting him to proceed pro se without a knowing, intelligent, and voluntary waiver of counsel.  We disagree.

{¶27} A criminal defendant has the constitutional right to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, "the Constitution * * * require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent * * *." *Iowa v. Tovar*, 541 U.S. 77, 87-88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph two of the syllabus (1976).

{¶28} Crim.R. 44(A) provides that a defendant is entitled to counsel "unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel." Moreover, Crim.R. 44(C) requires that waivers of counsel in "serious offense" cases be in writing. A "serious offense" is defined as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(C). While a signed waiver is preferable to an oral waiver, the absence of a written waiver is harmless error if the trial court has substantially complied with Crim.R. 44(A). *State v. Martin* ("*Martin II*"), 103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471, at ¶ 40.

{¶29} The Ohio Supreme Court held in *Martin II* that in order for a waiver of counsel to be valid, under Crim. R. 44, it must be made with "an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Martin II* at ¶ 39, quoting *Gibson,* 45 Ohio St.2d at 377, 345 N.E.2d 399, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

{¶30} While the United States Supreme Court "ha[s] not * * * prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *State v. Johnson,* 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 101, quoting *Tovar,* 541 U.S. at 88.

{¶31} The Sixth Amendment does not require extensive warnings in every case. *State v. Banks*, 5th Dist. Licking No. 09-CA-57, 2010-Ohio-2870, ¶ 30.

{¶32} Appellee draws our attention to *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033, at ¶ 21, a case procedurally and factually similar to the instant case, in which the defendant was before the trial court for resentencing; counsel was present in the courtroom but the defendant elected to proceed pro se:

> In this case, the record reveals that the trial court had Schleiger's presentence investigation report, which disclosed that Schleiger was 26 years of age when he was sentenced in 2009, had completed his GED, had committed multiple offenses as a juvenile, had a criminal history of more than 25 misdemeanor and minor felony offenses dating from 2001 through 2008, had been imprisoned on three prior occasions, and had served at least ten different jail terms. Thus, the trial court had a basis to evaluate Schleiger's level of education and sophistication with the legal system and could determine Schleiger's ability to grasp the limited nature of a hearing involving imposition of mandatory postrelease control. In addition, the court had the ability to assess the danger to Schleiger of proceeding pro se, as prejudice could involve either exceeding the scope of the hearing or imposing postrelease control in a manner contrary to law. Notably, Schleiger elected to proceed pro se after conferring with counsel, who remained in the courtroom at the trial court's direction to assist if necessary. This record therefore

demonstrates that Schleiger knowingly, intelligently, and voluntarily waived his right to counsel and reflects substantial compliance with Crim.R. 44(A).

{¶33} Similarly in the instant case, the resentencing hearing was for a limited purpose: making the requisite findings as prescribed by our remand. *Rolf*, supra, 2021-Ohio-2475 at ¶ 26. Counsel conferred with appellant and indicated he discussed the limited purpose of the hearing with appellant, supra. Appellant elected to proceed pro se after conferring with counsel, and argues extensively and coherently for non-consecutive sentences. The trial court cited appellant's criminal history from the sentencing memorandum. The trial court had the opportunity to evaluate appellant's level of education and sophistication with the legal system. It is evident from the record appellant grasped the limited purpose of resentencing. *Schleiger,* supra, ¶ 21.

{¶34} We have reviewed the record of the resentencing hearing and find that appellant understood the nature of the charges and the purpose of resentencing; the trial court discussed the range of permissible punishments and permitted appellant to present his own cogent argument against consecutive sentences. Ultimately appellant received the same sentence as the previous sentencing hearing, but the trial court made the requisite findings on the record.

{¶35} Appellant's first assignment of error is overruled.

## II.

{¶36} In his second assignment of error, appellant argues the trial court's decision to impose consecutive sentences is not supported by the record. We disagree.

{¶37} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶ 28.

{¶38} R.C. 2953.08(G)(2)(b) does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. The Ohio Supreme Court further elucidated in *State v. Toles*, 166 Ohio St.3d 397, 2021-Ohio-3531, 186 N.E.3d 784, at ¶ 10, "R.C. 2953.08, as amended, precludes second-guessing a sentence imposed by the trial court based on its weighing of the considerations in R.C. 2929.11 and 2929.12."

{¶39} R.C. 2929.14(C)(4) provides, in pertinent part:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and

to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶40} In *State v. Bonnell,* supra, 140 Ohio St.3d 209, 2014-Ohio-3177, the Ohio Supreme Court held, "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) *at the sentencing hearing* and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Id.* at syllabus (Emphasis added.)

{¶41} We have reviewed the transcript of the September 28, 2021 resentencing hearing and find the trial court did make the requisite findings mandated by R.C.

2929.14(C)(4) and *Bonnell,* supra. Appellant concedes the trial court made the proper findings but argues those findings are not supported by the record.  R.C. 2953.08(G)(2)(b) does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. The Ohio Supreme Court further elucidated in *State v. Toles*, 166 Ohio St.3d 397, 2021-Ohio-3531, 186 N.E.3d 784, ¶10, "R.C. 2953.08, as amended, precludes second-guessing a sentence imposed by the trial court based on its weighing of the considerations in R.C. 2929.11 and 2929.12."

{¶42} Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. *State v. Chandler*, 5th Dist. Licking No. 2021-CA-00073, 2022-Ohio-2634, ¶ 27; *State v. Kimes*, 5th Dist. Delaware No. 21 CAA 10 0055, 2022-Ohio-2759, ¶ 21. The sentence was within the statutory sentencing range. Appellant has not shown that the trial court imposed the sentence based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. *Id.* Further, the record contains evidence supporting the trial court's findings under R.C. 2929.14(C)(4). Therefore, we have no basis for concluding that it is contrary to law.

{¶43} Appellant's second assignment of error is overruled.

**CONCLUSION**

{¶44} Appellant's two assignments of error are overruled and the judgment of the Licking County Court of Common Pleas is affirmed.


By:  Delaney, J.,

Wise, Earle, P.J. and

Wise, John, J., concur.