[Cite as *State v. Lee*, 2025-Ohio-875.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| BILLY S. LEE | : | Case No. 2024 CA 00049 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County
Court of Common Pleas, Case No.
2023 CR 00613

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      March 13, 2025

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

KENNETH W. OSWALT                BRIAN A. SMITH
Assistant Prosecuting Attorney        123 S. Miller Rd., Suite 250
20 S. Second St., 4th Floor            Fairlawn, Ohio 44333
Newark, Ohio 43055

*Gormley, J.*

{¶1} Defendant-Appellant Billy Lee appeals his conviction following a jury trial in the Licking County Court of Common Pleas for possession of a fentanyl-related compound. Lee argues that the trial court violated his right to counsel by allowing him to represent himself at trial and that his conviction was against the manifest weight of the evidence. For the reasons explained below, we affirm the trial court's judgment.

## Facts and Procedural History

{¶2} In August 2023, Newark police officer Wesley Jackson initiated a traffic stop of a vehicle being driven by Oscar Evans. Lee was the owner of the vehicle and was seated in the front passenger seat. Lee told the officer that he had a pistol in his possession, and Officer Jackson took the weapon without incident. With Lee's consent, Jackson then searched the vehicle.

{¶3} During his search, Jackson found two small containers with a white powder-like substance in them. Jackson also found in the vehicle three bags, one of which had the name "Billy" written on it, and another contained a bank card with the name "Billy Lee" on it.

{¶4} Newark police officer Adam Carter arrived at the scene to assist with the traffic stop. Carter testified that Lee inconsistently described his travels in recent hours. Officer Carter further testified that Lee initially claimed ownership of the containers and said that the contents were "candy." After being shown the containers, though, Lee denied ownership and stated that he forgot he had taken his candy out of the vehicle earlier in the day. Subsequent testing of the containers' contents found that they contained more than one gram of fentanyl.

**{¶5}** Lee was indicted in Licking County on one count of possession of a fentanyl-related compound — a fourth-degree felony — with an accompanying one-year firearm specification. Lee was represented by court-appointed counsel from the case's earliest days through the morning of trial. On April 10, 2024, Lee's jury trial was scheduled to begin. That morning, though, Lee informed the court of his desire to fire his attorney and represent himself.

**{¶6}** A lengthy discussion then followed between the trial judge and Lee. The judge pointed out that Lee's lawyer was "experienced," and the judge asked Lee why he wanted to represent himself. Lee explained that he believed in himself, though he was willing to treat the attorney as his "co-counsel." "No," the judge told him. "You either represent yourself or he represents you." Lee responded, "I represent myself."

**{¶7}** The judge turned next to the penalties, pointing out to Lee that the firearm specification, if proven, would result in a "mandatory term of one year in the state penitentiary." As for the drug charge, the judge told Lee that he faced a "maximum sentence" of "one and a half years in the state penitentiary." Lee's "total exposure," the judge explained, was therefore "two and a half years at the state penitentiary." When the judge asked Lee if he understood, Lee said "Yes, sir."

**{¶8}** The judge then noted to Lee that he was not charged with owning the drugs or the firearm but rather "just having had them in your possession or on or about your person or under your control." Lee again said that he understood. And when the judge asked whether Lee understood "what constructive possession is," Lee responded "Yes, sir." Lee also told the judge that he had discussed that concept with his attorney. "And is

it still your intention here today to represent yourself?" the judge inquired. "Yes, sir," responded Lee.

**{¶9}** The judge next pointed out that Lee would be "held to the same rules of evidence as a lawyer would be." Again, Lee said that he understood. Lee even responded "Yeah" when the judge asked whether Lee was "familiar with the rules of criminal procedure or the rules of evidence."

**{¶10}** The judge then touched again on the solo nature of self-representation, noting that "there is no co-counsel" and that the judge himself "cannot be your lawyer." Lee said that he understood. If you "represent yourself," the judge explained, "you can't argue on appeal that you had ineffective assistance of counsel." Lee said that he understood. "Do you understand, Mr. Lee, that by representing yourself here, you are on your own?" the judge inquired. "Yes, sir," responded Lee.

**{¶11}** Then the judge told Lee that he had "the right to remain silent and not to incriminate" himself. Lee again said that he understood. "[S]ometimes it's just a lot easier for you to give statements with someone else asking you the questions," the judge noted. Lee said "Yes, sir."

**{¶12}** The judge then discouraged Lee from representing himself, indicating that "in almost every case it would be my opinion that a trained lawyer would defend you far better than you could defend yourself" and that self-representation is "almost always unwise. You're not familiar with the law. You're not familiar with handling a trial. You're not familiar with court procedures or the rules of evidence. And I would strongly urge you not to try to represent yourself." When the judge asked whether Lee understood the judge's position on that issue, Lee again said "Yes, sir."

**{¶13}** As the colloquy neared its end, the judge asked again whether Lee still wanted to represent himself and to give up his "right to be represented by a lawyer." "Yeah. Yes, sir," was Lee's response. "Are you making this decision freely, and does it reflect your personal desire?" asked the judge. "Yes, sir," said Lee. And when the judge concluded by asking whether Lee had "any questions about anything" that the judge had addressed, Lee said "No."

**{¶14}** After this discussion, Lee signed a written waiver of his right to be represented by counsel. His appointed counsel was instructed to remain present throughout the trial as standby counsel for Lee.

**{¶15}** At the conclusion of the trial, the jury found Lee guilty on the drug-possession charge and also found that the prosecution had proven the firearm specification. The trial judge imposed a 12-month sentence on the drug charge plus the mandatory one-year prison term on the firearm specification.

## Lee's Right to Counsel Was Not Violated

**{¶16}** In his first assignment of error, Lee argues that his waiver of his right to counsel in the trial court was not knowing, intelligent, and voluntary. We disagree.

**{¶17}** The Sixth Amendment, of course, provides that an accused is entitled to the assistance of counsel in a criminal case. U.S. Const., amend. VI. A criminal defendant also has the constitutional right to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 831–832 (1975). Any decision by a criminal defendant to waive his right to counsel and to represent himself must be made knowingly, intelligently, and voluntarily. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). "A criminal defendant must unequivocally and explicitly

invoke the right to self-representation." *State v. Belt*, 2020-Ohio-1302, ¶ 7 (5th Dist.), quoting *State v. Cassano*, 2002-Ohio-3751, ¶ 38.

{¶18} Further, Crim.R. 44(A) requires that a criminal defendant who is charged with a serious offense be represented by counsel unless, after being fully advised of that right to counsel, the defendant knowingly, intelligently, and voluntarily waives that right. The waiver must occur in open court and be recorded, and — in the case of a serious offense — the waiver must be in writing. Crim.R. 44(C). A "serious offense" includes any felony. Crim.R. 2(C). To comply with Crim.R. 44(A), the trial court must make an inquiry sufficient to determine whether the defendant "fully understands and intelligently relinquishes [his] right." *State v. Rolf*, 2022-Ohio-3049, ¶ 27 (5th Dist.), quoting *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph two of the syllabus.

{¶19} While state and federal courts have not prescribed a formula or script that must be read to a defendant who wishes to proceed without counsel, higher courts have explained that "[t]he information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *State v. Johnson*, 2006-Ohio-6404, ¶ 101, quoting *Tovar* at 88.

{¶20} We review the validity of a defendant's waiver without deference to the trial court's decision. *State v. Grimes*, 2024-Ohio-2609, ¶ 33 (5th Dist.). Whether a defendant has made a knowing, intelligent, and voluntary waiver of his right to counsel is determined by the totality of the circumstances. *State v. Hundley*, 2020-Ohio-3775, ¶ 103, citing *State v. Moore*, 81 Ohio St.3d 22, 31 (1998). A defendant who wishes to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that

the record will establish that 'he knows what he is doing.'" *Johnson* at ¶ 100, quoting *Faretta,* 422 U.S. at 835.

**{¶21}** The colloquy between Lee and the trial court shows that Lee knowingly, intelligently, and voluntarily waived his constitutional right to counsel. The trial court informed Lee that he had a constitutional right to be represented by counsel and advised Lee that it would be unwise to represent himself. Lee said that he understood. Lee was told that he would be held to the same procedural and evidentiary rules that attorneys are required to abide by. Lee said that he understood. The court advised Lee, too, that the firearm specification carried a mandatory term of one year of incarceration and that the maximum prison sentence on the drug charge was 18 months. The total possible sentence in the case was therefore, the judge told Lee, "two and a half years at the state penitentiary." Again, Lee said that he understood.

**{¶22}** Further, the trial judge reminded Lee that "you're not charged with owning any of these things, just having had them in your possession or on or about your person or under your control," and asked Lee if he understood what constructive possession was. Lee said that he did and that he had discussed constructive possession with his attorney. That attorney was present for the judge's morning-of-trial colloquy with Lee, and the attorney told the judge that he — the attorney — had met with Lee 11 times while Lee was awaiting trial. The judge ended the discussion with Lee by stating "I would strongly urge you not to try to represent yourself." Lee said that he understood.

**{¶23}** Throughout the conversation with the trial court, Lee unequivocally and explicitly invoked his right to self-representation by stating numerous times that he was

going to represent himself. Following this discussion, Lee maintained that it was his desire to represent himself, and he signed a written waiver of his right to counsel.

**{¶24}** After a review of the record, and based on the totality of the circumstances, we find that Lee knowingly, intelligently, and voluntarily waived his right to counsel.

**{¶25}** In support of his contrary view here, Lee says that the trial judge, before approving Lee's request to represent himself, did not adequately discuss with Lee the potential defenses that he might be able to present at a trial. Ohio courts, however, have not imposed on trial judges any obligation to explain potential defenses at waiver-of-counsel hearings. *See State v. Rivers*, 2023-Ohio-3533, ¶ 58 (11th Dist.) (finding that a defendant's self-representation decision was knowing, intelligent, and voluntary where the defendant said "Yes" in response to the trial judge's question "Do you know what defenses are available to assert to a jury in this case?"); *State v. Logan*, 2017-Ohio-8932, ¶ 33, 40 (3d Dist.) (rejecting a defendant's claim that his decision to represent himself was not knowing, intelligent, and voluntary where the trial court did not "advise him of the possible defenses"); *City of Akron v. Ragle*, 2005-Ohio-590, ¶ 12 (9th Dist.) ("This Court . . . will not adopt a rule which requires a trial court judge to . . . undertake pseudo-legal representation of a defendant by specifically advising him of possible viable defenses or mitigating circumstances existing in his case").

**{¶26}** And though Lee cites *State v. Gibson*, 45 Ohio St.2d 366 (1976), "the facts of Gibson reveal that the defendant in that case was *not* specifically advised of possible defenses or mitigating circumstances." (Emphasis in original.) *Ragle*, 2005-Ohio-590, ¶ 11 (9th Dist.). Even so, in *Gibson* the Court expressed its "satisf[action] that the

defendant[] knowingly, voluntarily and intelligently elected to defend himself." 45 Ohio St.2d at 377.

**{¶27}** We readily conclude that Lee's assurance to the trial judge that he — Lee — understood the concept of constructive possession and that he had spoken with his attorney about that concept provides ample support, when coupled with all of the other information in the colloquy, for our conclusion that Lee's waiver of counsel was knowing, intelligent, and voluntary.

**{¶28}** Lee claims, too, that the trial judge had an obligation to talk with him about each of the possible prison terms that he could have received for the fourth-degree-felony drug-possession charge. The judge's explanation of the maximum prison term for that charge was insufficient, he says, and he again cites *State v. Gibson*. Here again, Lee misreads *Gibson's* holding. Though the Supreme Court in *Gibson* quoted a 1948 U.S. Supreme Court decision that mentioned the importance of a defendant's understanding of the "range of allowable punishments" at any waiver-of-counsel hearing, the Court in its holding in *Gibson* found defendant Gibson's waiver of counsel to have been knowing, intelligent, and voluntary where the trial judge had addressed only the "maximum penalty" for the crime at issue. 45 Ohio St.2d at 373, 377. And this court, since *Gibson*, has indicated that a discussion about the maximum penalty — rather than the "range" of penalties — is sufficient at a waiver-of-counsel hearing. *See, e.g., State v. Ruse*, 2005-Ohio-734, ¶ 33-34 (5th Dist.) (finding that a defendant "voluntarily, knowingly and intelligently waived his right to counsel" where "the trial court informed appellant of the charges and the possible maximum sentences").

**{¶29}** Finally, Lee contends that the trial judge failed to apprise him about the nature of the drug-possession charge and the specification. Any suggestion on Lee's part, though, that he was uncertain about his drug charge or about the specification is surely not supported by the record. Lee was indicted in August 2023, and his trial was held in April 2024. He was represented by counsel throughout those eight months before the trial, and his lawyer met with him 11 times to prepare for the trial. In response to the trial judge's questions, Lee said on the morning of trial that he understood that he faced charges involving his possession of the drugs and the firearm rather than ownership of those items. Again, he indicated, too, that he understood the concept of constructive possession and had discussed that concept with his attorney.

**{¶30}** We find ample support in this record for our conclusion that Lee knew what he was doing when he chose to represent himself on the drug and firearm allegations.

**{¶31}** Lee's first assignment of error is overruled.

## Lee's Conviction Was Not Against the Manifest Weight of the Evidence

**{¶32}** In his second assignment of error, Lee contends that his conviction was not supported by the manifest weight of the evidence, and he focuses in particular on the issue of his alleged constructive possession of the drugs found in his vehicle.

**{¶33}** In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts as a thirteenth juror, and "after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.),

quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

**{¶34}** "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" (Emphasis in original.) *Thompkins* at 387. "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶35}** Possession in a drug case is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Harvath*, 2006-Ohio-5549, ¶ 32 (5th Dist.). Actual possession entails ownership and physical control. *State v. Holland*, 2013-Ohio-904, ¶ 35 (5th Dist.). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Holland* at ¶ 35, quoting *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). "Dominion and control may be proved by circumstantial evidence alone." *Harvath* at ¶ 32, citing *State v. Trembly*, 137 Ohio App.3d 134, 141 (8th Dist. 2000).

**{¶36}** "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Davis*, 2022-Ohio-577, ¶ 23 (5th Dist.), quoting *State v. Gross*, 2019-Ohio-5304, ¶ 14 (5th Dist.). A defendant's close proximity to contraband is circumstantial evidence that may show constructive possession. *Id.* at ¶ 25, citing *State v. Butler*, 42 Ohio St.3d 174, 176 (1989). The presence of multiple individuals in the location in which contraband is found does not prohibit a jury from finding that a defendant constructively possessed the contraband. *Id.* at ¶ 26.

**{¶37}** Lee's conviction was not against the manifest weight of the evidence. To be sure, he denied that the drugs were his when he was questioned by officers at the scene of his arrest. During the trial, though, Officer Carter testified that Lee initially claimed ownership of "candy" that was in the vehicle. When Carter showed Lee the containers of suspected fentanyl, Lee claimed that they did not belong to him and that he had taken his candy out of the vehicle earlier in the day.

**{¶38}** During the trial, the prosecution presented evidence showing that Lee was the owner of the vehicle where the drugs were found and that he admitted to driving the vehicle earlier in the day. In addition to the containers of fentanyl found on the driver's-side floorboard, officer Jackson found in the vehicle one bag with the name "Billy" written on it, and another bag in the vehicle contained a bank card with Lee's full name on it.

**{¶39}** Moreover, Officer Jackson testified that when he asked if there was any "fetty" in the car ("fetty" being a street name for fentanyl), Lee — according to Jackson's trial testimony — "looked down at the driver's side floorboard" where the fentanyl was

later found. Further, Officer Carter testified that Lee appeared to be nervous and provided inconsistent statements regarding his travels in the hours before the traffic stop.

**{¶40}** Though Lee was in the passenger seat when he was stopped, the jury had ample evidence before it to conclude that Lee was in constructive possession of the drugs that were found on the driver's-side floorboard in his vehicle, and of course the firearm itself was in his actual possession.

**{¶41}** After reviewing the record, we find that a rational basis exists in the record to support the jury's conclusion that Lee did have possession of the fentanyl and the gun. Lee's second assignment of error is overruled.

**{¶42}** For the reasons explained above, we affirm the judgment of the trial court.

By: Gormley, J.

Hoffman, P.J. and

Popham, J. concur.