OPINION
{¶ 1} Defendant-appellant Kelly Harvath appeals her conviction and sentence from the Stark County Court of Common Pleas on one count each of illegal assembly or possession of chemicals for the manufacture of drugs, carrying concealed weapons and aggravated possession of drugs. Plaintiff-appellee is the State of Ohio.
STATEMENT OF THE FACTS AND CASE
 {¶ 2} On October 12, 2005, the Stark County Grand Jury indicted appellant on one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C.2925.041(A), a felony of the third degree, one count of carrying concealed weapons in violation of R.C. 2923.12(A)(2), a felony of the fourth degree, one count of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree, and one count of operating a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. At her arraignment on October 14, 2005, appellant pleaded not guilty to the charges contained in the indictment.
 {¶ 3} Subsequently, a jury trial commenced on November 15, 2005. The following testimony was adduced at trial.
 {¶ 4} On September 6, 2005, Massillon Police Officer Brian Muntean was patrolling at 3:00 a.m. when he received a call about a suspicious green vehicle in the area of Erie and Cherry Streets that "might be casing out" the gas station at such location. Transcript at 89. After checking the area for approximately five minutes, Officer Muntean was unable to locate any vehicle that matched the description. As he was parked on the south side of Lincoln Way, the officer observed a dark green Bonneville matching the description. According to the officer, the occupants of the vehicle avoided eye contact with him.
 {¶ 5} Officer Muntean then made a U-turn and started following the vehicle westbound on Cherry past the Highway 21 north ramp. According to the officer, the driver of the vehicle passed the ramp as if she was going to travel westbound on Cherry, but then made "almost a backwards 120-degree turn to go northbound on 21, . . ." Transcript at 93. The officer then activated his red/blue overhead lights, but the vehicle failed to stop and increased its speed to 90 mph. Officer Muntean then activated his siren, but the vehicle kept traveling at a high rate of speed. The vehicle finally stopped before reaching the intersection of Forty Corners.
 {¶ 6} Appellant was the driver of the vehicle and a male passenger was in the front seat and a female passenger was in the back. At trial, Officer Muntean testified that a brown leather purse was found right between the driver and the passenger seats in the front of the vehicle. When the officer asked appellant her name, appellant responded "Christine Heppe." Appellant also gave Officer Muntean her social security number and her date of birth. According to the officer, appellant was "very lethargic" and appeared to be under the influence of something. Transcript at 106. In addition, appellant's eyes were glassy, her speech was slurred and she had poor balance. Appellant was arrested, but refused a urine test.
 {¶ 7} After appellant's arrest, the Bonneville was searched before it was towed. Officer Muntean testified that an Ohio ID card for Christine Heppe was found inside of the brown purse. The ID card contained the same social security number and date of birth that appellant had provided to the officer earlier. In addition, a loaded .25 automatic handgun was found in the purse along with a vial of suspected methamphetamine, a coffee filter, a white powder substance that was suspected to be methamphetamine, an electronic scale, one gold earring, 144 tablets of pseudoephedrine (cold tablets) and $329.00 in U.S. currency. The purse also contained a receipt dated September 6, 2005 at 2:25 a.m. from Denny's Restaurant in Canton, Ohio showing that three guests had dined at Denny's. The following testimony was adduced when Officer Muntean was asked the significance of the pseudoephedrine:
 {¶ 8} "A. Yes, actually I did call one of our detectives, Detective Sergeant Minarcheck, who deals in drug investigations. And I suspected it was used in the manufacture of methamphetamines. Of course, he confirmed that during his follow-up investigation." Transcript at 119-120.
 {¶ 9} On cross-examination, Officer Muntean testified that the Bonneville was registered to Sarah Maust and had not been reported stolen. The officer further testified that as appellant was sitting in a police cruiser, she told Officer Muntean that she did not have her ID, but gave him the same social security number, date of birth and name that was on the Ohio ID card that was located in the brown purse. Officer Muntean further testified that the female passenger in the Bonneville, whose name was Emily Gallagher, was arrested due to an outstanding warrant. The following is an excerpt of Officer Muntean's trial testimony:
 {¶ 10} "A. The vehicle owner, we attempted contact with the vehicle owner. I asked the Defendant whose vehicle it was and why do you have it. She didn't know whose vehicle it was or why she had it.
 {¶ 11} "The ID, once I found out days late she had lied about who she was, I attempted phone calls to the owner of the ID. Actually I attempted twice, and there was no answering machine of any sort to leave a message. And so I could not talk to the owner of the ID.
 {¶ 12} "Q. Of the vehicle or the ID?
 {¶ 13} "A. Either. They're separate, yes.
 {¶ 14} "Q. The vehicle is not this Christine person who's on the ID, correct?
 {¶ 15} "A. No, it's not." Transcript at 138-139.
 {¶ 16} When Officer Muntean was asked on cross-examination why his original report did not indicate that appellant had told him that her name was Christine Heppe, Officer Muntean indicated that, at the time he filed his report, he thought that appellant was infact Christine Heppe, but that a few days later he discovered otherwise. Officer Muntean then filed a supplemental report.
 {¶ 17} After appellant was arrested, her clothing and possessions were inventoried at the jail. At trial, George Macris, a corrections officer, testified that one gold earring, which matched the earring found in the purse, was inventoried as part of appellant's possessions along with other jewelry.
 {¶ 18} Appellant testified at trial in her own defense. Appellant testified that, on September 6, 2005, she drove her friend Shawn Phipps' car from Akron to Massillon. Phipps was in the front passenger seat of the Bonneville. Appellant testified that she did not stop after Officer Muntean activated his overhead lights since Emily Gallagher, the backseat passenger, "said she has a warrant, she didn't want me to stop." Transcript at 197. Appellant further testified that she refused to give Officer Muntean her name and that "a few minutes later he came back and opened the car door and started calling me Christine." Transcript at 199. When asked why she refused to give the police her name, appellant indicated that she had an outstanding warrant from Portage County.
 {¶ 19} At trial, appellant denied that the purse found in the Bonneville was hers and testified that she did not see the same inside the vehicle. She also denied knowledge of the gun and the drugs found inside the purse. Appellant also testified that the gold earring inventoried at the jail was not hers and that she did not wear gold. According to appellant, the police had her remove all of her jewelry and place it on the counter. Appellant further testified that the police had placed the contents of the purse found in the Bonneville on the counter and had inadvertently placed the gold earring in the wrong container. In essence, appellant testified that the purse contained a gold earring and that the same mistakenly got placed in her inventory container. In addition, appellant testified that she did not know anyone by the name of Christine Heppe. According to appellant, Emily Gallagher paid for breakfast at Denny's.
 {¶ 20} On cross-examination, appellant testified that she did not tell Officer Muntean that her name was Christine Heppe and that the officer was lying.
 {¶ 21} At the conclusion of the evidence and the end of deliberations, the jury, on November 15, 2005, found appellant guilty of illegal assembly or possession of chemicals for the manufacture of drugs, carrying concealed weapons and aggravated possession of drugs. The jury, however, found appellant not guilty of operating a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of them. As memorialized in a Judgment Entry filed on December 8, 2005, appellant was sentenced to an aggregate term of one year in prison.
 {¶ 22} Appellant now raises the following assignment of error on appeal:
 {¶ 23} "THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 24} Appellant, in her sole assignment of error, argues that her convictions are against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 25} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether, after reviewing the evidence in a light most favorable to the prosecutor any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See alsoState v. Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 26} In the case sub judice, appellant was convicted of one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), one count of carrying concealed weapons in violation of R.C. 2923.12(A)(2), and one count of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a).
 {¶ 27} R.C. 2925.041 states as follows: "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.
 {¶ 28} "(B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section." Methamphetamine is a schedule II controlled substance. R.C. 3719.41.
 {¶ 29} In turn, R.C. 2925.11 states, in relevant part, as follows: "(A) No person shall knowingly obtain, possess, or use a controlled substance." Finally, R.C. 2923.12 states, in relevant part, as follows: "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: . . .
 {¶ 30} "(2) A handgun other than a dangerous ordnance; . . ."
 {¶ 31} Both R.C. 2925.041 and R.C. 2925.11 prohibit possession. Possession is defined by R.C. 2925.01(K) as: "[H]aving control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 32} "Possession may be actual or constructive." State v.Kobi (1997), 122 Ohio App.3d 160, 174, 701 N.E.2d 420. To establish constructive possession of illegal drugs, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery (1976),46 Ohio St.2d 316, 329, 348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. State v. Trembly
(2000), 137 Ohio App.3d 134, 141, 738 N.E.2d 93. Circumstantial evidence that a defendant was located in very close proximity to readily usable drugs may show constructive possession. State v.Barr (1993), 86 Ohio App.3d 227, 247-248, 620 N.E.2d 242.
 {¶ 33} Appellant specifically contends that the State failed to prove beyond a reasonable doubt that the purse, and the contraband contained within the same, belonged to her. Appellant notes that another woman, Emily Gallagher, was in the Bonneville at the time, that the purse contained a receipt for Denny's and that Gallagher had paid for breakfast that morning, and that, once appellant was removed from the car by the police, Gallagher would have had ample time to put her purse in the front seat. Appellant also notes that while the purse contained a cell phone, it was stipulated at trial that the phone belonged to someone else. Finally, appellant contends that she does not know anyone named Christine Heppe and that the gold earring found during the inventory of her possessions at the jail that matched the earring found in the purse was not hers.
 {¶ 34} However, as noted by appellee, evidence was adduced at trial that the purse and the contraband contained within the same belonged to appellant. As is stated above, Officer Muntean testified that appellant identified herself as "Christine Heppe". An Ohio ID card containing the name "Christine Heppe" was found in the purse, which was located in the front of the Bonneville next to the driver's seat. Appellant was the driver of the vehicle. No other females were seated in the front seat of the Bonneville. In addition, testimony was adduced at trial that an earring inventoried from appellant's possessions at the jail matched an earring found in the purse. Testimony also was adduced at trial that when Sergeant Minarcheck of the Massillon Police Department walked into the jail and asked for Christine, appellant came forward. While appellant maintains that Officer Muntean was lying and that he was not a credible witness, the jury, as trier of fact, was in the best position to assess credibility. Clearly, the jury found Officer Muntean to be a credible witness and found appellant less than credible.
 {¶ 35} Based upon all of these facts, we find that, after viewing the evidence in a light most favorable to the prosecution, the jury could have found the essential elements of the crimes for which appellant was convicted were proven beyond a reasonable doubt. The jury could have found, beyond a reasonable doubt, based upon the evidence, that appellant possessed the gun, drugs, and chemicals necessary to manufacture methamphetamine all of which were found within the purse. Furthermore, we find that this is not "the exceptional case in which the evidence weighs heavily against the conviction". Martin, supra.
 {¶ 36} For the foregoing reasons, appellant's sole assignment of error is overruled.
 {¶ 37} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.