[Cite as *State v. Tolley*, 2024-Ohio-713.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. 2023 CA 00040 |
| | : | |
| JOSHUA JACK TOLLEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2022 CR 2589

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      February 26, 2024

APPEARANCES:

For Plaintiff-Appellee:

KYLE L. STONE
STARK COUNTY PROSECUTOR

CHRISTOPHER A. PIEKARSKI
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

For Defendant-Appellant:

BERNARD L. HUNT
2395 McGinty Rd. NW
North Canton, OH 44720

*Delaney, J.*

{¶1} Defendant-Appellant Joshua Jack Tolley appeals his March 13, 2023 conviction and sentence by the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} On January 6, 2023, the Stark County Grand Jury issued an indictment charging Defendant-Appellant Joshua Jack Tolley with one count of aggravated possession of drugs (to wit: methamphetamine), a second-degree felony in violation of R.C. 2925.11(A)/(C)(1)(c), and one count of aggravated trafficking in drugs (to wit: methamphetamine), a second-degree felony in violation of R.C. 2925.03(A)(2)/(C)(1)(d). Tolley entered a not guilty plea to the indictment.

## Jury Trial

{¶3} A jury trial was held on March 7 and 8, 2023. The following facts were adduced from the trial.

{¶4} On December 3, 2022, at approximately 6:53 p.m., City of Canton Police Department Detectives Camden Sens and Matthew Thomas were following a tan Jeep Liberty through the City of Canton. The detectives were in an unmarked vehicle.

{¶5} The detectives observed the Jeep Liberty stop at a residence on Webster Avenue NE in the City of Canton. When the vehicle stopped, a person exited the vehicle from the rear passenger side of the vehicle and went into a residence. The person was inside the residence for approximately one minute, left the residence, and got back into the rear passenger side of the Jeep Liberty. Because of the lighting, the detectives could not get a good description of the person who exited and entered the vehicle.

{¶6} The Jeep Liberty continued traveling in the City of Canton when the detectives observed the vehicle commit a traffic violation. They called a nearby police cruiser to initiate a traffic stop of the Jeep Liberty, which was effectuated at Belden Avenue NE.

{¶7} Det. Sens and Det. Thomas assisted with the traffic stop. Det. Sens approached the driver's side of the Jeep Liberty and Det. Thomas approached the passenger's side. Four occupants were present inside the Jeep Liberty: A.M. (the registered owner of the vehicle) was in the driver's seat; S.N. was in the front passenger's seat; Z.H. was in the back seat on the driver's side; and Tolley was in the rear passenger's seat. The occupants of the vehicle were asked to exit the vehicle. Det. Thomas ordered Tolley to exit the vehicle and he complied. Det. Thomas observed that Tolley was wearing a Cleveland Browns hoodie and a Cleveland Browns jacket. He patted Tolley down and found a glass pipe, typically used to smoke methamphetamine, and a cell phone.

{¶8} Det. Sens came over to the passenger side of the vehicle where the rear passenger side door was still open. On the floor of the rear passenger side where Tolley had been seated, Det. Sens observed a plastic baggy filled with a light-colored substance. Det. Sens also saw several denominations of U.S. currency on the floor of the rear passenger side where Tolley had been seated. Det. Sens and Det. Thomas discovered that the plastic baggy on the floor contained three smaller, knotted baggies. The three baggies contained a cloudy, off-white, rock-like substance that appeared to the detectives to be either crack, cocaine, or methamphetamine. The discovery of cash and the baggies appeared to the detectives to be indicative of drug trafficking. They continued searching the Jeep Liberty and found a backpack located in the center of the rear passenger seat,

within arm's reach of Tolley. The detectives did not find any baggies or U.S. currency on the floor of the rear driver's side where Z.H. was seated.

{¶9} Det. Sens searched the front passenger side and inside the glove box, he found a plastic baggy similar to the three baggies found on the floor of the rear passenger side. The baggy in the glove box contained a fine, white, powdery substance.

{¶10} On the driver's side, the detectives found a Hi-Point .380 pistol between the driver's seat and the driver's side door. The gun's magazine was loaded.

{¶11} The detectives spoke to the four occupants of the Jeep Liberty at the scene, but the detectives chose to transport Tolley back to the Detective Bureau of the police station for further questioning. Tolley executed a written notice of waiver of constitutional rights prior to questioning. His interview was recorded and played for the jury in State's Exhibit 10A. Tolley told the detectives that the police found all the baggies. When asked where the baggies came from, Tolley stated that they all had baggies, but not A.M. or S.N. He did not mention Z.H. Tolley admitted that his fingerprints would be on the gun but did not know why the gun was passed up to A.M.

{¶12} The detectives did not open the backpack found in the Jeep Liberty until December 6, 2022. Inside the backpack, the detectives found a black knit stocking cap, which contained three plastic baggies containing a methamphetamine-like substance and empty plastic baggies. The backpack also contained three digital scales. One of the digital scales had a Cleveland Browns logo on it. One of the digital scales had a white, powdery residue on it. Finally, the detectives found multiple cell phones inside the backpack. The backpack was searched on December 6, 2022 and Tolley was interviewed by the police on December 3, 2022. The detectives never asked Tolley whether the backpack belonged

to him or any of the occupants of the Jeep Liberty; the detectives did not bring Tolley in for another interview to ask about the backpack. No one in the Jeep Liberty claimed or denied ownership of the backpack.

{¶13} None of the evidence found in the Jeep Liberty on December 3, 2022, including the contents of the backpack discovered on December 6, 2022, were sent out for DNA testing or fingerprint testing. The cell phones found in the backpack were not examined to determine the registered owner.

{¶14} Jennifer Creed, a criminalist with the Canton/Stark County Crime Laboratory, testified that she tested the contents of the baggies found in the Jeep Liberty. Creed determined the three baggies found on the floor of the rear passenger side, the one baggie found in the glove box, and the three baggies found in the black knit stocking cap contained methamphetamine, a Schedule II substance. Creed testified that while she weighed the bags individually and recorded the weights in her lab notes, her official lab report admitted at trial stated the baggies weighed as follows: (1) the three baggies found on the floor of the rear passenger side and the one baggie found in the glove box (four baggies total) contained 6.90 grams (plus or minus 0.04 grams) of methamphetamine and (2) the three baggies found inside the black knit stocking cap contained 9.32 grams (plus or minus 0.03 grams) of methamphetamine. The total weight, 16.22 grams, was greater than five times the bulk amount. The white residue on the digital scale was methamphetamine but the amount was not weighable.

{¶15} The State rested and Tolley moved for a Crim.R. 29 dismissal, which the trial court denied. Tolley then rested.

**Jury Verdict**

{¶16} The matter was sent to the jury with the following jury verdict forms. First, the jury was asked whether it found Tolley guilty or not guilty of aggravated possession of drugs, as charged pursuant to R.C. 2925.11(A)(C)(1)(c). The jury was asked to make an additional finding if they found Tolley guilty of aggravated possession of drugs. The additional finding stated:

> We, the jury in this case, duly impaneled and sworn, having found the defendant, Joshua Tolley, guilty of aggravated possession of drugs, _____ that the amount of methamphetamine exceeded five times the bulk amount but was less than fifty times the bulk amount.
>
> (*) insert in ink – "do find or do not find". If the jury does not find this amount, please indicate the amount of methamphetamine the jury finds: _____.

Second, the jury was asked whether it found Tolley guilty or not guilty of aggravated trafficking of drugs, as charged pursuant to R.C. 2925.03(A)(2)(C)(1)(d).

{¶17} After deliberation, the jury returned their verdict, finding Tolley (1) not guilty of aggravated trafficking of drugs and (2) guilty of aggravated possession of drugs. The jury completed the additional finding because it found Tolley guilty of aggravated possession of drugs. It completed the additional finding as follows:

> We, the jury in this case, duly impaneled and sworn, having found the defendant, Joshua Tolley, guilty of aggravated possession of drugs, <u>do not find</u> that the amount of methamphetamine exceeded five times the bulk amount but was less than fifty times the bulk amount.

(*) insert in ink – "do find or do not find". If the jury does not find this amount, please indicate the amount of methamphetamine the jury finds: <u>less than 6.90</u>.

**Sentencing**

{¶18} After the jury issued its verdict that found Tolley guilty of aggravated possession of drugs, counsel for Tolley argued that because the jury found the amount of methamphetamine was less than 6.90 grams, the degree of the offense would be a fifth-degree felony and not a third-degree felony. The trial court asked the parties to brief the issue. In its post-conviction memorandum of law, the State conceded the degree of the offense was a felony of the fifth degree based on the jury's specific finding that the amount was "less than 6.90." *See* R.C. 2925.11(A)(C)(1)(a).

{¶19} Tolley appeared for the sentencing hearing on March 13, 2023. The trial court sentenced Tolley pursuant to a fifth-degree felony. On the record, the trial court imposed the following sentence: community control for a period of three years, a thirty-hour per week employment or complete thirty hours of community service per week, complete treatment with Stark Regional Community Correction Center, complete Reentry Court, complete two-hundred hours of community service through Day Reporting, complete substance abuse treatment, and complete a mental health assessment.

{¶20} On March 13, 2023, the trial court filed a "CRIMINAL HEARING DISPOSITION SHEET." The disposition sheet checked the box stating, "COMMUNITY CONTROL GRANTED ENTRY TO FOLLOW <u>3 YRS, 1SP</u>." The trial court checked the box for, "DEFENDANT SENTENCED ENTRY TO FOLLOW." The judge signed the disposition sheet.

{¶21} On March 24, 2023, the trial court issued a judgment entry entitled, "FOUND GUILTY BY JURY IN PART AND FOUND NOT GUILTY IN PART AND SENTENCE DEFERRED." In the judgment entry, the trial court set forth the facts of Tolley's conviction of aggravated possession of drugs. The judgment entry further stated:

> * * * Thereupon the Prosecuting Attorney moved that sentence be pronounced against said defendant.
>
> Whereupon the Court was duly informed in the premises on the part of the State of Ohio, by the Prosecuting Attorney, and on the part of the defendant, by the defendant and his Counsel, and thereafter the court asked the defendant whether he had anything to say as to why judgment should not be pronounced against him, and the defendant, after consulting with his Counsel, said that he had nothing further to say except that which he had already said.
>
> Thereupon the Court ordered that sentencing is deferred until March 13, 2023.

"Thereupon the Court ordered that sentencing is deferred until March 13, 2023" is the final sentence in the judgment entry. The judgment entry does not set forth the sentence imposed by the trial court on March 13, 2023. The judgment entry is signed by the judge, the Stark County Prosecutor, and the Assistant Prosecutor.

{¶22} On March 31, 2023, the trial court issued a judgment entry entitled, "PROBATION TOLLED." The judgment entry signed by the judge stated,

> This day, 3/13/2023, this cause having come on for consideration by the Court after being informed that the defendant was placed on community

control sanctions by this Court on 3/13/2023, for a period of 3 years Intensive Supervision.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Defendant's probation be and the same hereby is tolled on Case No. 2022-CR-2589 pending his release from the Ohio Department of Rehabilitation and Correction.

### Notice of Appeal

{¶23} On April 24, 2023, Tolley filed a Notice of Appeal. Tolley states in the Notice of Appeal that he is appealing the trial court's decisions on or about March 9, 2023 and the Judgment Entry of Sentencing filed on March 24, 2023. Tolley attached the March 13, 2023 disposition sheet and the March 24, 2023 judgment entry to his Docketing Statement.

{¶24} On December 6, 2023, this Court remanded the matter to the trial court to issue a final appealable order in conformance with the requirements of *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142. The trial court issued a final appealable order pursuant to the *Lester* requirements on January 5, 2024, where it journalized the sentence imposed by the trial court at the March 13, 2023 sentencing hearing.

{¶25} It is from this judgment entry that we now review.

### ASSIGNMENT OF ERROR

{¶26} Tolley raises one Assignment of Error:

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ANALYSIS**

{¶27} In his sole Assignment of Error, Tolley contends his conviction for aggravated possession of drugs, a fifth-degree felony in violation of R.C. 2925.11(A), was against the manifest weight of the evidence. We disagree.

**Standard of Review**

{¶28} Upon a challenge to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Ashcraft*, 5th Dist. Richland No. 2021-CA-0024, 2023-Ohio-2378, ¶ 14, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997). "Weight of the evidence" addresses the evidence's effect of inducing belief. *Thompkins, supra*, 78 Ohio St.3d at 386-387, 678 N.E.2d 541 (1997); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (quotation marks omitted); *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶ 25, citing *Thompkins*.

{¶29} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins, supra*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). The Ohio

Supreme Court has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191– 192 (1978).

## Conviction Supported by the Weight of the Evidence

{¶30} Tolley was convicted of a violation of R.C. 2925.11(A)(C)(1)(a) for possession of methamphetamine, a Schedule II substance:

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree, and

division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

{¶31} In his appeal, Tolley contends the jury lost its way when it convicted him of aggravated possession of methamphetamine because there was no direct evidence linking Tolley to the baggies of methamphetamine found in the vehicle. He points to the evidence that Tolley was not the owner or the driver of the vehicle where the baggies of methamphetamine were found. The Canton Police Department did not find methamphetamine on Tolley's person. The police did not attempt to obtain fingerprints or conduct DNA testing on the baggies or the knit stocking hat. There were three other people in the vehicle to whom the methamphetamine could have belonged.

{¶32} The evidence presented to the jury in this case was largely circumstantial. It is well-settled that circumstantial evidence has the same probative value as direct evidence. *State v. Nelson*, 5th Dist. Stark No. 2021CA00112, 2022-Ohio-4170, 2022 WL 17168527, ¶ 42 citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). Possession is defined by R.C. 2925.01(K) as "having control over a thing or substance, but [is] not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "Possession may be actual or constructive." *State v. Kuhn*, 5th Dist. Fairfield No. 22CA40, 2023-Ohio-2740, 2023 WL 5091884, ¶ 18 quoting *State v. Harvath*, 5th Dist. Stark No. 2005CA00330, 2006-Ohio-5549, ¶ 31, citing *State v. Kobi*, 122 Ohio App.3d 160, 174, 701 N.E.2d 420 (6th Dist.1997). To establish constructive possession of illegal drugs, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *Id.*, citing *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351

(1976). Dominion and control may be proven by circumstantial evidence alone. *Id.*, citing *State v. Trembly*, 137 Ohio App.3d 134, 141, 738 N.E.2d 93 (8th Dist.2000). Circumstantial evidence that a defendant was located in very close proximity to readily usable drugs may show constructive possession. *Id.*, citing *State v. Barr*, 86 Ohio App.3d 227, 247-248, 620 N.E.2d 242 (8th Dist.1993).

{¶33} The police detectives observed Tolley in the rear passenger seat. On the floor of the rear passenger side where Tolley had been seated, the detectives found a plastic baggy containing three baggies. The three baggies were tested and determined to contain methamphetamine. Another baggie containing methamphetamine was found in the glove box. The detectives also found a backpack located in the center of the rear passenger seat, within arm's reach of Tolley. Inside the backpack, the detectives found a black knit stocking cap, which contained three plastic baggies of methamphetamine.

{¶34} Tolley admitted during his interview with the detectives that "we all had baggies."

{¶35} The baggies were all weighed and tested by the Canton/Stark County Crime Laboratory. The criminalist determined all the baggies found in the vehicle contained methamphetamine, a Schedule II substance. When weighing the bags, the criminalist testified that she weighed the bags individually and recorded the weights in her lab notes but her official lab report admitted at trial stated the baggies weighed as follows: (1) the three baggies found on the floor of the rear passenger side and the one baggie found in the glove box (four baggies total) contained 6.90 grams of methamphetamine and (2) the three baggies found inside the black knit stocking cap contained 9.32 grams of methamphetamine.

{¶36} In making its verdict finding Tolley guilty of aggravated possession of methamphetamine, the jury found that Tolley possessed "less than 6.90 grams" of methamphetamine. The evidence of weight supports the jury's weighing of the evidence. By the jury's finding of "less than 6.90 grams," the jury found the State did not meet its burden as to the three baggies found in the knit stocking cap (which weighed in total 9.32 grams) and found beyond a reasonable doubt that Tolley possessed less than the three baggies found on the floor of the rear passenger side and the one baggie found in the glove box (which weighed in total 6.90 grams). The jury's weight determination, and its not guilty finding on the charge of aggravated trafficking, shows the jury considered the evidence and discerned beyond a reasonable doubt that Tolley knowingly obtained, possessed, or used methamphetamine.

{¶37} We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the entire record, we find Tolley's conviction was not against the manifest weight of the evidence. On the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Tolley's guilt as to only less than 6.90 grams.

{¶38} Tolley's sole Assignment of Error is overruled.

**CONCLUSION**

{¶39} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

King, J., concur.