[Cite as *State v. Kennard*, 2024-Ohio-1791.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| -vs- | Case No. 2023CA00110 |
| RICHARD KENNARD | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:      Appeal from the Stark County Court of Common Pleas, Case No. 2022 CR 1528

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      May 8, 2024

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

VICKI L. DESANTIS
Appellate Division
Assistant Prosecuting Attorney
110 Central Plaza South, Suite #510
Canton, Ohio 44702-1413

For Defendant-Appellant

D. COLEMAN BOND
116 Cleveland Avenue, N.W., Suite #600
Canton, Ohio 44702

*Hoffman, J.*

**{¶1}** Defendant-appellant Richard Christopher Kennard appeals the judgment entered by the Stark County Common Pleas Court convicting him following jury trial of aggravated possession of drugs (R.C. 2925.11(A)(C)(1)(c)), possession of a fentanyl-related compound (R.C. 2925.11(A)(C)(11)(d)), aggravated trafficking in drugs (R.C. 2925.03(A)(1)(A)(2)(C)(1)(d)), trafficking in a fentanyl-related compound (R.C. 2925.03(A)(1)(A)(2)(C)(9)(e)), two counts of assault (R.C. 2903.13(A)(C)(5)), and obstructing official business (R.C. 2921.31(A)(B)), and sentencing him to an aggregate term of imprisonment of seven to ten years. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On July 10 and 11, 2022, Deputy Tyler Miller of the Stark County Sheriff's Office was working a midnight shift, patrolling in Plain Township. The Deputy observed a vehicle driven by Appellant make an illegal U-turn in the intersection of Rowland and 31st Street, and stopped Appellant's vehicle.

**{¶3}** Despite orders to stay inside the vehicle, Appellant and his passenger, T.W., exited the vehicle and remained outside. Deputy Michael Greissing came upon the traffic stop while on patrol, and approached the passenger, while Deputy Miller spoke to Appellant.

**{¶4}** Appellant refused to cooperate with Deputy Miller. He would not follow commands, continued to talk on his cell phone, and would not provide identification upon request. Appellant eventually provided his social security number. Deputy Miller learned the vehicle belonged to Appellant's mother, and Appellant's driver's license was suspended. During a patdown search of Appellant, Deputy Miller found $3,000 in cash on Appellant's person, as well as a second cell phone.

{¶5}    Meanwhile, T.W. cooperated with Deputy Greissing.  T.W. stated he and Appellant were going to get a four-wheeler, which had been stolen from T.W. When Deputy Greissing walked over to assist Deputy Miller, he observed a large bag of a white crystal substance, believed to be methamphetamine, on the hood of the vehicle.  The bag was located by the windshield wipers on the passenger's side.

{¶6}    Because suspected drugs were found and Appellant had a suspended license, the deputies decided to tow the vehicle.  Pursuant to protocol, the deputies conducted an inventory search.  Suspected methamphetamine was found on the inside of the driver's door, and two brown baggies of suspected fentanyl were found in the center console.

{¶7}    Appellant's mother and girlfriend arrived on the scene.  As the deputies attempted to place Appellant in the police cruiser, Appellant braced himself so as to prevent them from shutting the door.  Appellant stated he was having a medical situation, and asked for an ambulance to be called.  Appellant told the deputies he would cooperate with them if they released the $3,000 in cash he was carrying to his mother or girlfriend. The deputies declined to release the cash.

{¶8}    Appellant was compliant with the emergency medical technicians and was transported to Aultman Hospital.  Appellant was treated and released, but refused to leave the hospital.  Deputy Miller had handcuffed one of Appellant's hands to the bed.  When the deputy and hospital security officers attempted to pull his other hand behind his back, Appellant begin to fight.  During the struggle, Deputy Miller sustained a pulled labrum in his shoulder, which would require surgery to repair.  Appellant also bit Deputy Miller. When a security guard attempted to help remove Appellant from the bed, Appellant

punched the guard, who was diagnosed with a minor concussion and missed three days of work.

**{¶9}** The drugs were submitted to the Stark County Crime Lab for testing. The brown baggies recovered from the center console contained 3.62 grams and 7.04 grams of fentanyl, above the bulk amount of one gram. The baggie recovered from the hood of the car contained 55.7 grams of methamphetamine, above the bulk amount of three grams. A second baggie[1] contained 6.20 grams of methamphetamine.

**{¶10}** Appellant was indicted by the Stark County Grand Jury with three counts of assault, obstructing official business, aggravated possession of drugs, possession of a fentanyl-related compound, aggravated trafficking in drugs, and trafficking in a fentanyl-related compound. The state entered a *nolle prosequi* as to one count of assault. The case proceeded to jury trial in the Stark County Common Pleas Court.

**{¶11}** Appellant testified at trial he had just picked up T.W. to check out some four-wheelers, when he was stopped by Deputy Miller. Appellant testified T.W. stayed inside the car fifteen to twenty seconds after Appellant exited the car. Appellant was aware T.W. sells and uses drugs. Appellant testified he became frustrated because he was stopped by police, and the drugs inside the car did not belong to him. He testified he has severe asthma and a metal rod in his leg from a past break. He testified he was in severe pain from the officers trying to close the cruiser door on his leg. He testified he did not intentionally hit or bite anyone at the hospital, but was in pain and upset because he was denied the use of crutches.

---

[1] It is unclear from the testimony where in the vehicle this baggie of methamphetamine was recovered.

**{¶12}** The jury found Appellant guilty on all counts and he was convicted in accordance with the jury's verdict. The trial court sentenced him to an aggregate term of incarceration of seven to ten years, to be served consecutively with the sentences imposed in two unrelated Stark County cases.

**{¶13}** It is from the July 28, 2023 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED.

II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

I., II.

**{¶14}** Appellant argues his convictions are against the manifest weight and sufficiency of the evidence.

**{¶15}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶16}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record,

weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**Aggravated Possession of Drugs, Possession of a Fentanyl-Related Compound**

**{¶17}** Appellant argues the State did not present sufficient evidence he possessed any of the drugs recovered from the vehicle. He argues the judgment is against the manifest weight of the evidence because T.W. had access to the drugs in the center console. He further argues because the large bag of methamphetamine was found on the passenger side of the hood, the jury lost its way in finding the baggie was placed there by him, rather than by T.W.

**{¶18}** As to the methamphetamine, Appellant was convicted of aggravated possession of drugs in violation of R.C. 2925.11((A)(C)(1)(c):

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound,

hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

(c) If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term.

{¶19} Appellant was also convicted of possession of a fentanyl-related compound in violation of R.C. 2925.11(A)(C)(11)(d):

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

(C) Whoever violates division (A) of this section is guilty of one of the following:

(11) If the drug involved in the violation is a fentanyl-related compound and neither division (C)(9)(a) nor division (C)(10)(a) of this section applies to the drug involved, or is a compound, mixture, preparation, or substance that contains a fentanyl-related compound or is a combination of a fentanyl-related compound and any other controlled substance and neither division (C)(9)(a) nor division (C)(10)(a) of this section applies to the drug involved, whoever violates division (A) of this section is guilty of

possession of a fentanyl-related compound. The penalty for the offense

shall be determined as follows:

(d) If the amount of the drug involved equals or exceeds one hundred

unit doses but is less than two hundred unit doses or equals or exceeds ten

grams but is less than twenty grams, possession of a fentanyl-related

compound is a felony of the second degree, and the court shall impose as

a mandatory prison term one of the prison terms prescribed for a felony of

the second degree.

**{¶20}** Possession is defined by R.C. 2925.01(K) as "having control over a thing or substance, but [is] not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "Possession may be actual or constructive." *State v. Kuhn,* 5th Dist. Fairfield No. 22CA40, 2023-Ohio-2740, 2023 WL 5091884, ¶ 18, *quoting State v. Harvath*, 5th Dist. Stark No. 2005CA00330, 2006-Ohio-5549, ¶ 31, *citing State v. Kobi*, 122 Ohio App.3d 160, 174, 701 N.E.2d 420 (6th Dist.1997). To establish constructive possession of illegal drugs, the evidence must prove the defendant was able to exercise dominion and control over the contraband. *Id.*, *citing State v. Wolery,* 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *Id., citing State v. Trembly*, 137 Ohio App.3d 134, 141, 738 N.E.2d 93 (8th Dist. 2000). Circumstantial evidence a defendant was located in very close proximity to readily usable drugs may show constructive possession. *Id., citing State v. Barr,* 86 Ohio App.3d 227, 247-248, 620 N.E.2d 242 (8th Dist. 1993).

{¶21} In the instant case, while the vehicle belonged to Appellant's mother, he had control over the vehicle on the night in question. Although the large baggie of methamphetamine was found on the hood of the car on the passenger side, the State presented evidence both occupants of the vehicle exited after the stop, despite being ordered to stay in the vehicle. Deputy Greissing testified suspected methamphetamine was observed on the driver's door and seat, and suspected fentanyl was recovered from the center console, both areas of the car to which Appellant had access. We find the State presented evidence from which a reasonable trier of fact could conclude Appellant possessed the drugs recovered by police.

{¶22} Appellant argues T.W. was acting suspicious, yet not charged. He argues because the officer did not see him throw the drugs on the hood of the car, the drugs must have been placed there by T.W. He argues T.W. remained in the car 15-20 seconds after Appellant exited, giving T.W. opportunity to place the drugs in the center console. He argues the drugs were not tested for DNA or fingerprint evidence, and further despite the testimony drugs were found in the driver's door, the witness from the crime lab testified the drugs were all labeled as coming from the hood of the car or the center console.

{¶23} By Appellant's own testimony, he picked up T.W. just before he was stopped by police. Although the record is not clear if the drugs were among those collected and tested, both deputies testified a substance which looked like methamphetamine was located inside the driver's door. Although Deputy Miller testified he did not see Appellant toss anything on the hood of the car, he also testified he could not see clearly because Appellant had his back to him most of the time. We find the jury

did not lose its way in finding Appellant constructively possessed the drugs recovered from the vehicle.

**Aggravated Trafficking in Drugs, Trafficking in a Fentanyl-Related Compound**

{¶24} Appellant was convicted of aggravated trafficking in drugs and trafficking in a fentanyl-related compound in violation of R.C. 2925.03:

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:

(d) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated trafficking in drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term. If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, aggravated trafficking in drugs is a felony of the first degree, and the court shall impose as a mandatory prison term a first degree felony mandatory prison term.

(9) If the drug involved in the violation is a fentanyl-related compound or a compound, mixture, preparation, or substance containing a fentanyl-related compound and division (C)(10)(a) of this section does not apply to the drug involved, whoever violates division (A) of this section is guilty of trafficking in a fentanyl-related compound. The penalty for the offense shall be determined as follows:

(e) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds one hundred unit doses but is less than two hundred unit doses or equals or exceeds ten grams but is less than twenty grams, trafficking in a fentanyl-related compound is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree. If the amount of the drug involved is within that range and if the offense was

committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, trafficking in a fentanyl-related compound is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

**{¶25}** Appellant restates his arguments concerning possession of the methamphetamine and fentanyl.  For the reasons stated above regarding his convictions of the possession offenses, we find the State presented sufficient evidence the drugs were in his possession, and the judgment is not against the manifest weight of the evidence.  Both deputies testified the amount of methamphetamine and fentanyl recovered are indicative of trafficking and sales, rather than personal use.  The officers further testified the large amount of cash in Appellant's possession and his possession of two cell phones are indicative of trafficking.  We find the convictions are supported by sufficient evidence, and are not against the manifest weight of the evidence.

### Assault, Obstructing Official Business

**{¶26}** Appellant was convicted of two counts of assault in violation of R.C. 2903.13(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."  He was also convicted of obstructing official business in violation of R.C. 2921.31(A), which provides, "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any

act that hampers or impedes a public official in the performance of the public official's lawful duties."

**{¶27}** With regards to these convictions, Appellant argues he testified he did not intentionally strike, bite, or fight with anyone, but was in severe pain because of the problems with his leg, and was having an asthma attack.

**{¶28}** The State presented evidence during the initial traffic stop, Appellant initially refused to give Deputy Miller identification, and would not get off his cell phone during his interaction with the officer. The State presented evidence Appellant refused to get inside the cruiser, and also refused to leave the hospital bed when discharged. The State presented evidence Appellant fought with police and hospital security, during which Deputy Miller suffered a shoulder injury requiring surgery. In addition, Appellant bit Deputy Miller and struck a security guard, causing the security guard to suffer a concussion. We find the State presented sufficient from which the jury could find Appellant guilty of assault on both the security guard and Deputy Miller, and from which the jury could find Appellant guilty of obstructing official business for his actions at the scene of the stop and at the hospital.

**{¶29}** Appellant does not specifically challenge the sufficiency of the State's evidence, but rather points to his own testimony he did not intentionally fight with anyone or injure anyone. However, the credibility of the witnesses is an issue for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We find the jury did not lose its way in finding Appellant

guilty despite his self-serving testimony concerning his intentions, and the judgments of conviction are not against the manifest weight of the evidence.

{¶30} The first and second assignments of error are overruled. The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, J.

Delaney, P.J. and

Wise, J. concur